Bark TENNESSEE et al. *v.* J. and J. TARDOS.
J. and J. TARDOS *v.* Bark TENNESSEE et al.

The bark Tennessee on her arrival in New Orleans from Marseilles, delivered a number
of casks of wine which had been damaged by grease and water. She had previously
carried a cargo of lard to Marseilles, and after discharging, was scraped and limed. On
her voyage to New Orleans, she encountered stormy weather, which caused her to leak.
*Held :* That the vessel was liable for the damage caused by the lard, but not for that
caused by the water.

APPEAL from the First District Court of New Orleans, *Larue,* J.    The
two suits of the above title were tried together.

The first was brought against *J.* and *J. Tardos* to recover freight and primage
amounting to four hundred and eighty-eight dollars and seven cents.    The
second was instituted by *J.* and *J. Tardos v. The Bark Tennessee and Owners,*
to recover one thousand one hundred and seventy-nine dollars eighty-three cents,
amount of damage done to certain wines which defendants undertook to carry
from Marseilles to New Orleans, being the same for which freight and primage
is claimed in the first suit.

The petition in the suit of *J.* and *J. Tardos v. The Bark Tennessee and Own-
ers,* sets forth the following facts : that six hundred quarter pipes of red wine,
known as port wine or burgundy, were shipped at Marseilles on board the Ten-
nessee in good condition, to be delivered to the plaintiffs as consignees in New
Orleans ; that the master and owners failed to fulfill their contract in this ; that
when her cargo was discharged in New Orleans, two hundred and thirty-
three quarter pipes of the wine were found to be discolored and soiled, by
grease and sea water, to such an extent as to be unmerchantable.

*Miles Taylor* and *H. H. Taylor,* for appellants.    *W. S. Upton,* for ap-
pellees    The judgment of the court *(Eustis,* C. J., absent,*)* was pronounced by

ROST, J. The defendants were the consignees of certain casks of wine brought
in the Tennessee, the plaintiffs' vessel, from Marseilles to New Orleans. There
were cross suits by the vessel for her freight, and by the consignees for dam-
age to the goods, which suits were consolidated.

Upon the arrival of the casks, they were examined by the port-wardens, who
reported a portion of them " to be badly stained, discolored and soiled by grease
and sea water, " so much so, in their opinion, as to render them " unmerchant-
able. "    This condition of the casks is also shown by other testimony.    A wit-
ness offered by the plaintiffs, on his cross-examination, states that " the casks
were very greasy—the grease was running on them. " It also appears that such
a condition of casks, though it does not injure the wine, affects the sale.

The vessel on previous voyages had carried lard. This article leaks ; the
flooring and timbers became saturated with it, and it is very difficult to clear the
vessel of it entirely. Before the Tennessee took in her cargo, her hold was
scraped and limed; but it is obvious from the result, she could not have been
entirely cleaned.

Immediately after leaving the port of Marseilles, the vessel encountered very
stormy weather, which caused her to leak ; and being obliged to carry sail to
keep off the land, she laid over a good deal, so that the pumps could not reach

<div style="float:right">TENNESSEE<br>v.<br>TARDOS.</div>

the water she made.    The water and grease washed upon the casks, and they became damaged in the manner above stated.

It is said, that this was an injury by perils of the sea, for which the vessel should not be charged.  So far as the sea water stained the casks, we think the ship should not answer for it.   But there was another coöperating cause of damage.  The lard in the ship's hold, being washed up with the water, attached itself to the casks and put them in the greasy condition described by the witnesses.   The injury of the casks was directly promoted by the greasy condition of the ship.  If the ship had been clean, the injury would have been different in its character, and as we may fairly infer from the evidence, less in its pecuniary amount.   We are forbidden, therefore, to attribute the whole damage to perils of the sea; on the contrary, we must set a portion of it down to the defective condition of the vessel, and the vessel must answer for such damage as was occasioned by that defect.

Let us take a parallel case by way of illustration.   The vessel is undoubtedly answerable for the damage attributable to bad stowage.   Suppose a vessel so stowed that the goods would be safe in ordinary weather, but for want of proper dunnage, would suffer in a gale of wind.   A gale occurs, causing the vessel, which before was tight and strong, to spring a leak, and the goods are injured by contact with salt water.   But in addition thereto, they get knocked about in the vessel's hold and broken, and this damage, under the evidence, is clearly attributable to bad stowage, and would not have occurred if the stowage had been good.    The ship would not be liable for the damage by salt water; but it would be clearly unjust to exempt her from the damage arising from bad stowage.

We consider an allowance of two dollars per cask as sufficient to cover the proportion of damage occasioned by grease, which deducted from the freight, will leave a balance of twenty-two dollars and seven cents in favor of the ship.

It is therefore decreed, that the judgment of the district court be reversed, and that the said *Horatio Eagles, William N. Hazard* and *Albert Cook*, receive from the defendants, *J.* and *J. Tardos*, the sum of twenty-two dollars and seven cents, the plaintiffs to pay the costs of the appeal; the costs of the proceedings in the court below, hitherto incurred, to be borne equally by the parties, and the costs of executing this decree to be paid by the defendants.